UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

OBDULIO NUNEZ

          JUDGE FAILLA

    Plaintiff,

**TRIAL BY JURY DEMANDED**

**14 CV 5456**

Civil No.

-against-

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, POLICE OFFICERS
WILLIE NUNEZ TAX I.D. NUMBER 12044
AND UNDERCOVER POLICE OFFICER I.D. NUMBER 27230,
UNDERCOVER POLICE OFFICE NO.9751
OF THE 33RD POLICE PRECINCT and OTHER
OFFICERS WHOSE IDENTITIES ARE
UNKNOWN AT THIS TIME ALL MEMBER OF THE NYPD
S

RECEIVED JUL 21 2014 U.S.D.C. S.D.N.Y. SUMMONS & CASHIERS

**COMPLAINT**

    Defendants,
-------------------------------------------------------X

    Plaintiff, OBDULIO NUNEZ by and through his attorney, Andres M. Aranda Esq., respectfully shows to this court and alleges as following:

## INTRODUCTION

1.    This is an action, commenced by plaintiff for money damages against defendants for committing acts within the scope of their employment and under color of law and depriving plaintiff of his rights secured by the Constitution and laws of the United States and the State of New York.

    Plaintiffs allege that defendants, individually and through said Officers deprived him of his right to be free from being falsely arrested, maliciously prosecuted, assaulted, battered, humiliated and caused to suffer physical pain and mental anguish.

    This action has been commenced within three years after plaintiffs' claim arose by reason of the false arrest, malicious prosecution, assault, battery, unusual and unnecessary force being used to effect the illegal and false arrest of the plaintiff with unnecessary excessive force being used to arrest him. This unnecessary force caused the plaintiff to sustain serious

physical and emotional injury and pain, resulting in the plaintiff having to be stitched by a doctor, resulting in his being incarcerated and causing him to receive medical attention for bruised ribs and other injuries.

## JURISDICTION AND VENUE

2.   This action is brought pursuant to 42 U.S.C. Sec. 1983 and 1988 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the laws of the State of New York.

3.   Jurisdiction is founded upon 28 U.S.C. Sec. 1331, 1343 (1-4), and 2202.

4.   Venue is proper in this district pursuant to 28 U.S.C. Sect. 139 (b).

## JURY DEMAND

5.   Plaintiffs demand trial by jury in this action.

## PARTIES

6.   Plaintiff OBDULIO NUNEZ is a Legal Permanent Resident of the United States and a life-long resident OF NEW YORK CITY.

7.   Defendant CITY OF NEW YORK (CITY) is a municipal corporation organized under the laws of the State of New York and the public employer of POLICE OFFICERS WILLIE NUNEZ AND UNDERCOVERS 27230, 9751 AND THE OTHER MEMBERS OF THE NEW YORK CITY POLICE FORCE THAT PARTICIPATED IN THE PLAINTIFF'S ARREST AND PROSECUTION and the John and Jane Doe police officers named as a defendant in this action and whose identities are still unknown.

8.   Defendant New York City Police Department is an agency of the City of New York, existing and operating by virtue of the laws of the State of New York and the City of New York.

9.   At all times relevant herein, defendant Police Officers, were acting as agents, servants and employees of the defendant CITY of New YORK and in furtherance of and within the scope of THEIR employment, and THE BUSINESS OF THE City, and acting under color of law; to wit NEW YORK and by virtue of its rules, regulations and statutes. The Defendant City is responsible as respondeat superior for the actions, and inactions, of its agents, and employees, acting under color of law and in the carrying out of their employment and the business of said City Defendant.

## FACTUAL ALLEGATIONS

10.     `On or about FEBRUARY 3, 2013 at approximately 12:40 AM, the Plaintiff, OBDULIO NUNEZ, was arrested by the defendants, all without probable cause or justification. Mr. OBDULIO NUNEZ, a 63 year old cab driver, was driving in his cab cruising around looking for passengers, when he stopped at the corner of 178th Street and Broadway, in Washington Heights, State and City of New York, when 2 female pedestrian approached his cab. He lowered his window to ask where she wanted to be taken, the two female pedestrians responded by asking him if he wanted "a blow job". Upon hearing this , he took off in his cab, he was stopped a short distance later, when police officers rushed him with guns drawn and forcibly removed him from his cab. The defendants all, proceeded to throw him to the ground, handcuff him from the back, punch, kick and otherwise physically abuse him as he lay helpless on the floor. They eventually removed him to the precinct and from there to Central Booking.  He was charged with patronizing A PROSTITUTE in the Third Degree in violation on Penal Law 230.40 and A Misdemeanors. It was alleged that Mr. OBDULIO NUNEZ, who is a Cab Driver and who was working at the time, they falsely claimed that he had agreed to engage in sexual intercourse with undercover officers 27230 and 9751.  The excessive force used by the police officers to arrest Mr. NUNEZ was and is unnecessary. Furthermore, this abuse caused Mr. OBDULIO NUNEZ  pain, embarrassment, shame, humiliation, physical and psychological pain. The cops physically and verbally abused Mr. NUNEZ, who was falsely and needlessly arrested and charged as stated above. After approximately five adjournments, during which Mr. Nunez had to appear in court, the Court dismissed all charges and sealed the arrest.  This occurred on 10-23-13 , 2013 in New York County Criminal Court Part B, BEFORE THE Honorable Judge EDWARDS.

11.     On the day of his arrest, the police approached Mr. OBDULIO NUNEZ as he was peacefully and lawfully WORKING in an attempt to entrap him into committing a crime. After the entrapment failed, they nevertheless arrested him and the police failed to perform even the most basic of investigations prior to arresting Mr. NUNEZ. Cab drivers regularly stop when they spot a pedestrian looking around and appearing to be looking for a cab, especially on cold nights, and the NYPD knows or should know this as they do not live in a bubble; but one assumes, in the real world. However, we know that the police officers are under pressure to make arrests from their superiors to make arrest and fulfill arrest quotas, all without regard for the legality of the arrest, the safety of the innocent citizen being arrested or any regard for the civil rights of the poor unfortunate dupe being taken into police custody.  He was approached by police officers who proceeded to VIOLENTLY AND WITHOUT GOOD CAUSE OR PROBABLE CAUSE to, use excessive force, assault and arrest Mr. NUNEZ, who protested his innocence and who repeatedly asked why he was being arrested, assaulted and abused by the very people sworn to protect him from harm. This use of excessive force was not only unnecessary, but it was wantonly and illegally done. Mr. NUNEZ protested HIS  innocence  at the precinct where he was humiliated and forced to spread his cheeks for no other reason than the apparent amusement of some police officers who had not been trained properly either in arrest procedures or respect for the dignity of the public at large.

12. Mr. NUNEZ, after he were arrested and assaulted, was questioned by Police Officers. Mr. NUNEZ INDICATED THAT HE KNEW NOTHING ABOUT A BLOW JOBIT SINCE HE WAS JUST WORKING AT THE TIME OF HIS ARREST AND HAD NOT ENGAGED IN ANY SEXUALLY RELATED CONVERSATION WITH ANY ONE, LESS OF ALL THE PERSON THAT APPROACHED HIM AT THE CORNER OF 178 STREET AND BROADWAY. HE FURTHER INDICATED THAT WHEN THE FEMALES INDICATED THAT THEY WERE NOT INTERESTED IN A CAB, HE TOOK OFF SINCE HE WANTED NO PART OF THEM AND BELIEVED THAT THEY WANTED TO ROB HIM, SOMETHING THAT UNFORTUNATELY OCCURS MUCH TOO FREQUENTLY IN WASHINGTON HEIGHTS. This was NEVER ATTEMPTED TO BE VERIFIED WITH THE POLICE CAMERAS LOCATED AT THAT VERY SAME CORNER, OR IN ANY OTHER CREDIBLE WAY. However, he was handcuffed, illegally searched, and battered all without any cause or justification, in violation of Mr. NUNEZ'S civil rights. He was arrested without any CRIMINALITY ON HIS PART and without even performing a minimal investigation as to what, if anything, he was doing at the scene. In fact, the police kept telling Mr. NUNEZ that they were sure that he had participated in A SEX RELATED CONVERSATION WITH THE UNDERCOVER FEMALE, even tough he had repeatedly denied having done so. Mr. NUNEZ denied any knowledge of this. Nevertheless, the police arrested Mr. NUNEZ and detained this hard working senior citizen, Hispanic male, for a couple of hours d at the precinct station house and at Central Booking, a dangerous, foul smelling place. Mr. NUNEZ ALSO PROTESTED HIS INNLOCENCE AND INDICATED THAT THERE WAS NO SEXUAL CONVERSATION INVOLVED OR HAD, THE UNDERCOVER WENT AS FAR AS LYING on the criminal court complaint AND SAYING THAT Mr. NUNEZ HAD STATED THAT HE WOULD PAY "$20.00 FOR ORAL SEX WITH HER". He also was taken to Central Booking for processing.

13. Mr. OBDULIO NUNEZ was released WITHOUT BAIL AT ARRAINGMENT and given a court date. Eventually he went to court several times and the charges were dismissed by the Court on 2013.

14. Mr. OBDULIO NUNEZ was incarcerated for approximately 28 hours.

15. Mr. OBDULIO NUNEZ WAS EVENTUALLY RELEASED AND HAD TO RETURN to the New York County Criminal Court several times, approximately five times.

16. The CHARGES PERTAINING to the alleged Patronizing a Prostitute were dismissed as the defendant there, plaintiff here, was innocent. The police officers failed to produce any credible evidence, or to show any probable cause for the arrest on that charge, or to even show up in Court and the matter had to be dismissed.

17. The ordeal greatly traumatized BOTH Mr. NUNEZ and his family who as a result of his unlawful incarceration, and the excessive force used to arrest him, including being violated and humiliated as a direct result of the unnecessary, inhuman treatment that Mr. OBDULIO NUNEZ received at the hands of the police officers, including defendant P.O. WILLIE NUNEZ, suffered

the deprivation of freedom, HE WAS ASSAULTED DURING THE ARREST. The criminal charges against the DEFENDANT THEN, PLAINTIFF NOW, OBDULIO NUNEZ were terminated favorably.

## DAMAGES

18. As a direct and proximate result of the said acts of the defendants, Mr. OBDULIO NUNEZ suffered the following injuries and damages:

   a. Violation of their rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution;
   b. Loss of physical liberty due to incarceration;
   c. Humiliation, embarrassment and injury to reputation.
   d. Attorney fees.
   e. Pain and suffering as a result of the unnecessary and excessive force used to arrest him without probable cause and/or justification.
   f. Bruised about body due to the excessive force used to unlawfully arrest him.
   g. Mental pain and anguish due to his arrest, accusation, incarceration and the excessive and unnecessary force used to arrest this 63 year old working man.

## CAUSES OF ACTION

### COUNT 1

**42 U.S.C. SEC. 1981, 1983 – FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS:   FALSE ARREST**

19. Paragraphs 1-18 are incorporated by reference as though fully set forth.

20. Plaintiff did not commit ANY CRIMINAL ACT OR ACTS OR VIOLATIONS, either before or at the time he was unlawfully arrested, imprisoned, prosecuted and deprived of his constitutional rights as set forth in the Constitution of the United States, particularly 42 U.S.C. Sec. 1983 and the Constitution of the State of New York, any illegal act. The Fourth Amendment protects people from unreasonable searches and seizures. The plaintiff claims that his arrest, incarceration, beating, search and arrest were unlawful because it was made without probable cause to believe that Mr. OBDULIO NUNEZ had committed any of the crimes for which each was allegedly arrested. The continued prosecution which forced Mr. OBDULIO NUNEZ to remain incarcerated for WELL OVER 24 HOURS, in fact he spent 48 hours behind bars waiting to be

arraigned; was made with malice by the officers who wrongfully arrested and detained him AND CAUSED HIM TO RETURN TO COURT AND PHYSICALLY ABUSED HIM.

21. As a direct result of the illegal actions and conduct on the part of the defendants, their agents, servants and employees, acting under color of law, plaintiff was unlawfully arrested and imprisoned, until he was released.

22. That on or about FEBRUARY 3, 2013, at approximately 12:40 AM. That day, while the plaintiff was lawfully INSIDE HIS LIVERY CAB DRIVING LAWFULLY in New York County and subsequent times thereafter, including but not limited to the 33RD New York POLICE Precinct, the defendants, their agents, servants and employees falsely accused and arrested Mr. NUNEZ without any probable cause or any justification, right or grounds therefore. And unfairly, unjustly, and mercilessly beat him up using excessive and unnecessary force AND MEANS, including making the Plaintiff pull his pants down and spread his cheeks, to carry out his unlawful and illegal arrest.

23. That the plaintiff was wantonly deprived of his liberty and unnecessarily humiliated him and used unnecessary and excessive force to arrest this 63 year old Dominican Male.

24. That the defendant police officer, were acting under color of law and authority; did not have any probable cause, permission or justification whatsoever, to arrest or injure Mr. OBDULIO NUNEZ, who was unmercifully beaten up and used as both a punching bag and a step stool by members of the NYPD.

25. That at all times hereinafter mentioned, the defendant police officers were employed in their respective capacities by the Defendant CITY and THE NEW YORK CITY POLICE DEPARTMENT and were acting under the color of their official capacity and their acts were performed under the color of the polices, statues, ordinances, rules and regulations of the CITY and in furtherance of the official business of said City of New York. The City is responsible as respondeat superior for the actions of its employee police officers and said defendant City and is Police Department have failed to properly train its officers, including failing to train then so that they don't beat up, kick, punch, physically abuse, verbally abuse or mace helpless individuals, particularly when they don't resist, do not pose a threat to the officers' safety and after they have been handcuffed or make them pull their pants down, bent over and spread the cheeks of their behinds . The City also failed to supervise its police department or it's individual officers and that by reason of that failure, this sad and unnecessary beating and arrest occurred.

26. That at all times hereinafter mentioned, the defendants John and Jane Doe Police Officers were acting under color of law and in their official capacity as New York City Police Officers and as agents of the City of New York.

27. That during all times hereinafter mentioned, the defendant police officers and each of them, separately, and in concert, acted under color and pretense of law, to wit: under color of the statues, ordinances, regulations, customs and usages of the CITY and the defendants herein, separately and in concert, engaged in the illegal conduct here mentioned to the injury of the plaintiff OBDULIO NUNEZ and deprived him of his rights privileges and immunities secured to plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States and the laws of the United States to wit: to be free from warrantless searches and arrest without probable cause. The defendants' actions played a substantial role in bringing about a deprivation of the Fourth Amendment right to be free of unreasonable search and seizure and restraint on his liberty without due process and arrest without probable cause. All of the named defendant Police Officers acted with malice and used unnecessary and excessive force to handcuff and restrain Mr. OBDULIO NUNEZ who was 63 years old at the time of this abusive arrest and who weighed approximately 170 lbs.

28. That the defendant City of New York failed to properly train and supervise its police force allowing it to act in an unlawful, illegal and wanton manner arresting and abusing members of the public, all without probable cause or justification. Recent case law as well as newspaper articles, news bulletins and general bad press received by the NYPD, including with regards to its stop and frisk policy, have put the City of NY and its Police Department on notice of the need for better training, supervision and selection of its officers, and said officers, on the date of the arrest, were working under pressure to make arrest and fulfill arrests quotas without any regards for the civil rights of the citizens of the City of New York, including Mr. NUNEZ, AND SAID OFFICERS SET UP A TRAP/CHECK POINT WHERE THE UNCERCOVER FEMALE WOULD APPROACH UNSUSPECTING MOTORIST IN AN ATTEMPT TO ENTRAP THE POOR UNSUSPECTING DRIVERS, INCLUDING PLAINTIFF, WHO WERE NOT ENGAGED IN ANY CRIMINALITY WHATSOEVER.

29. That said City was aware of the unlawful, illegal and wanton acts of its police force and of the pattern of illegal arrests being conducted by said police force, including but not limited to punching, kicking, making, and otherwise abusing young/ old male minorities, including plaintiff.

30. Furthermore, the defendants, each and every one of them, were all negligent in carrying out their respective duties towards the citizens and public of the City of New York, and were motivated by malice, prejudice and ill will towards the Dominican Community of Washington Heights. The NYPD, through its Police Force, is trying to harass, antagonize and get rid of the Dominicans residing in Washington Heights in an attempt to "clean-up" the area for gentrification purposes, much like they have done to other parts of the City, including The Lower East Side and El Barrio/Spanish Harlem.

FEDERAL CIVIL RIGHTS CLAIM

Plaintiff OBDULIO NUNEZ repeats and re-alleges paragraphs 1 through 30.

31. Defendant police officers' actions were part of a pattern, practice, policy and modus operandi of the Police Department of the City of New York and the Defendant City of New York to ignore and violate the Constitutional rights of the people they come in contact with and whom they are supposed to serve.

32 The acts of NYPD, Dectectives, UNDERCOVER OFFICERS and Police Officer defendants herein and the various John and Jane Does were committed under their authority as NYPD and as police officers vested under and by virtue of the laws of the State of New York, and were, therefore, committed under the color of statute and the laws of the State of New York.

33. The defendant City knew of the need for additional screening, training, supervision, disciplining and holding accountable of police officers to insure that : (a) they refrain from ignoring evidence that would indicate that an accused is innocent; (b) refrain from misrepresenting, withholding or falsifying evidence; (c) exercising care and thoroughness in the investigation and prosecution of a case involving the alleged possession of narcotics, particularly when none were found; (d) accurately identify and handle exculpatory material, such as the absence of narcotics.

34. Through intention and deliberate indifference, the defendant City failed to adequately provide for screening, training,, supervising, and disciplining of police officers with respect to the above mentioned issues. This type of intentional conduct and deliberate indifference is evidenced by news articles, demonstrations and decisions of the courts of the state of New York reporting that the NYPD and its employees are and have engaged in various acts of misconduct including but not limited to, "testilying", the falsification of evidence, the wrongful withholding of evidence of innocence, physically and emotionally abusing defendants, Abner Louima for instance, giving false, incomplete and misleading testimony, and generally failing to act in a reasonable, professional and honest capacity including but not limited to the following decisions:

    Riddick v. City of New York, 772 NYS 2d, 294, 4 A.D. 3d 242 (1st Dept. 2004)
    Bonefant v. Kelly, 759 NYS 2d 872, 306 A.D. 2d 108 (1st Dept. 2003)
    Wagnwe v. Kerik, 748 NYS 2d 860, 298 A.D. 2d 322 (1st Dept. 2002)
    Seligson v. Kerik, 744 NYS 2d 655, 295 A.D. 2d 262 (1st Dept. 2002)
    Foy v. Safir, 717 NYS 2d 126, 277 A.D. 2D 169 (1ST Dept. 2000)
    Titone v. Safir, 717 NYS 2d 22, 277 A.D. 2d 161 (1st Dept. 2000)
    Castro v. Safir, 717 NYS 2d 44, 277 A.D. 2d 123 (1st dept. 2000)
    Mieles v. Safir, 707 NYS 2d 437,, 272, A.D. 199 (1ST. Dept. 2000)
    Sanniti v. Safir, 689 NYS 2d 479, 261 A.D. 2d 153 (1st, Dept. 1999)
    Brovakos v. Bratton, 678 NYS 2d 21, 254 A.D. 2d 32 (1st Dept. 1998)
    Ranalli v. Safir, 672 NYS 2d 872, 250 A.D. 2d 507 (1st. Dept. 1998)
    Vasquez v. Safir, 673 NYS 2d 12, 250 A.D. 2d 448 (1st. Dept. 1998)
    People v. Kenrick, 162 Misc. 2d 75, ( Crim. N.Y. Cty 1994)

Hickey v. Ward 55 NYS 2d 763, 161 A.D. 2d 495 (1st. Dept.)

35. Upon information and belief, based on and supported by several newspaper articles, police officers have not been discipline by the defendant City or defendant NYPD for their misconducts, despite repeated judicial findings that police officers have engaged in misconduct. Such failure constitutes deliberate indifference toward the constitutional rights of the accused and such misconduct constitutes a practice, pattern and custom of engaging in police misconduct including but not limited to withholding exculpatory evidence, filing false complaints and arresting without probable cause, to name a few.

36. By virtue of the decisions referred to above, and other information and court decisions, NYPD and the City knew that the need for adequate training, screening, supervising and disciplining of its employees was and is compelling because of the overriding credo of those such as the defendants herein to make arrests and clear cases quickly and at all costs with deliberate and total disregard for the truth, the safety of those arrested and for the constitutional rights of the accused.

37. The acts, conduct and behavior of the defendants herein were negligent and as such plaintiffs were injured and damaged in the sum of ten million dollars.

38. At all times relevant the defendants police officers and NYPD were acting IN THE SCOPE OF THEIR EMPLOYMENT AND/OR POLICY MAKER FOR THE CITY OF NEW YORK.

39. To the extend applicable, New York City is liable as respondeat superior for said defendants' actions.

40. Defendant City of New York knew or should have known of the Police defendants' propensity to engage in illegal, wrongful and negligent acts as detailed above, including but not limited to beating up a helpless civilian who was sleeping on a couch and arresting said civilian without any evidence, probable cause or reason to do so, and the City has failed to correct such wanton police conduct.

41. Defendant City failed to take adequate steps to discipline, train, supervise or otherwise correct the improper and illegal conduct of said defendants and/or as a matter of policy and practice, has with deliberate indifference failed to take steps to uncover and/or correct such conduct on the part of its police force.

42. Defendant City of New York has damaged plaintiff by its failure to properly supervise, train, discipline, review, remove, or correct the illegal and improper acts of said defendants and/or as a matter of policy and practice, has with deliberate indifference, failed to take steps to uncover and/or correct such conduct.

43. The injuries suffered by plaintiff were proximately caused by each and every one of the policies and practices set forth herein.

44. The actions of the defendants; including the City of New York, resulted in the deprivation of Plaintiff's rights pursuant to the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution.

45. As a result of the false arrest, assault, battery, defamation, malicious prosecution, unlawful imprisonment, the violations of said rights and deprivation of liberty, Plaintiff was damaged in the sum of Fifty Million Dollars.

That by reason of the aforesaid, the Plaintiff has been damaged in the sum of TEN MILLION DOLLARS (10,000,000.00)

**WHEREFORE**, plaintiff requests the following relief as against all of the defendants:

1. Award compensatory damages in the amount of Ten Million Dollars on each cause of action.
2. For such other and further relief as to this Court may deem just and proper.

Dated: Bronx, New York
DECEMBER 13, 2013

                                                                                            _____
                                                                                            Andres M. Aranda
                                                                                            930 Grand Concourse, suite 1A
                                                                                            Bronx, New York 10451
                                                                                            (718) 590-1904
                                                                                            (718) 541-9241
                                                                                            Amarandawill.c.u@g-mail.com